


**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| JENI HODGE, TRACEE SHIELDS, BARBARA DODD, MARY ANGELA GARRARD, KELLY GARRARD TRINITY MCQUARRY, ANDREA HOOD JOYCE SHAVER,CHARLOTTE KELLY KELLIE LYNN BELL ESTILL, TAMMY RATLIFF, TERESA NIX | ) | CIVIL ACTION NUMBER: |
| Plaintiffs | ) | |
| vs. | ) | JURY DEMAND |
| STATE OF ALABAMA; ALABAMA BOARD OF PARDONS AND PAROLES; ANTHONY BAKER, individually; WAYNE MADDUX, in his official capacity as Officer-in-Charge for the Alabama Board of Pardons and Paroles; JAMES WRIGHT individually, and in his official capacity as Jailer for Winston County, Alabama; WILLIAM C. SEGREST, in his official capacity as Executive Director for Alabama Board of Pardons and Paroles; ANN CARGO, in her official capacity as Division I, Division Director for Alabama Board of Pardons and Paroles; DAVID DOUGLAS, in his official capacity as District E, District Manager for the Alabama Board of Pardons and Paroles; WINSTON COUNTY, ALABAMA; MARION COUNTY, ALABAMA; DON WRIGHT, in his official capacity as Jail Administrator for Winston County, Alabama; HAROLD PENDLEY, in his official capacity as Jail Administrator for Marion County, Alabama; | ) | |
| Defendants. | ) | |

## COMPLAINT

### INTRODUCTION

1. This lawsuit arises out of a widespread pattern and practice of sexual abuse and sexual harassment perpetrated by Alabama Board of Pardons and Paroles' agent,

servant, or employee, Anthony Baker (hereinafter "Baker"), on all females assigned to Baker as their probation officer. Baker was a probation officer in the Twenty-Fifth Judicial Circuit of Alabama which encompasses all of Marion and Winston Counties. Baker systematically abused his power and authority over all females assigned to Baker's care by the Alabama Board of Pardons and Paroles (hereinafter "ABPP") and he subjected the females under his care and supervision to sexual abuse including, but not limited to, acts of indecent exposure, unwanted sexual advances, unwanted touching, lewd and obscene gestures and comments, sexual contact, manual penetration of genitals, forcible sodomy, and rape. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured by the United States Constitution, the Constitution of Alabama, and Alabama common law.

## II. JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to the Acts of Congress known as 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202, and 42 U.S.C. Section 1983. This suit by Plaintiffs is authorized and instituted pursuant to 42 U.S.C. Section 1983. Additionally, plaintiffs assert supplemental state law claims of invasion of privacy, outrage, and assault and battery, wantonness, wantonness per se, false imprisonment, negligent/wanton hiring, training, and supervision, and felonious injury, under Alabama law.

3. Venue is proper in the Jasper Division of this District pursuant to 28 U.S.C. Section 1391(b).

## III. PARTIES

4. The plaintiff Tracee Shields (hereinafter "Shields") is a female born on February 7, 1971, and is a citizen of the United States and resident of the State of Alabama.

5. The plaintiff Teresa Nix (hereinafter "Nix") is a female born on August 20, 1958, and is a citizen of the United States and resident of the State of Alabama.

6. The plaintiff Kellie Lynn Bell Estill (hereinafter "Estill") is a female born on September 26, 1977, and is a citizen of the United States and resident of the State of Alabama.

7. The plaintiff Tammy Ratliff (hereinafter "Ratliff") is a female born on July 8, 1979, and is a citizen of the United States and resident of the State of Alabama.

8. The plaintiff Charlotte Kelly (hereinafter "Kelly") is a female born on October 22, 1971, and is a citizen of the United States and resident of the State of Alabama.

9. The plaintiff Jeni Hodge (hereinafter "Hodge") is a female born on March 11, 1970, and is a citizen of the United States and resident of the State of Alabama.

10. The plaintiff Joyce Shaver (hereinafter "Shaver") is a female born on February 24, 1964, and is a citizen of the United States and resident of the State of Alabama.

11. The plaintiff Barbara Dodd (hereinafter "Dodd") is a female born on November 1, 1960, and is a citizen of the United States and resident of the State of Alabama.

12. The plaintiff Andrea Hood (hereinafter "Hood") is a female born on December 4, 1975, and is a citizen of the United States and resident of the State of Alabama.

13. The plaintiff Mary Angela Garrard is a female born on February 6, 1973, and is a citizen of the United States and resident of the State of Alabama.

14. The plaintiff Kelly Garrard is a female born on February 27, 1969, and is a citizen of the United States and resident of the State of Alabama.

15. The plaintiff Trinity McQuarry (hereinafter "McQuarry") is a female born on June 26, 1978, and is a citizen of the United States and resident of the State of Alabama.

16. The defendant Alabama Board of Pardons and Paroles (hereinafter "ABPP") is an entity of the State of Alabama. ABPP is an entity subject to suit under 42 U.S.C. Section 1983.

17. The defendant, State of Alabama, is one of the 50 States of the United States of America.

18. The defendant, Winston County, Alabama, is a political subdivision of the State of Alabama.

19. The defendant, Marion County, Alabama, is a political subdivision of the State of Alabama.

20. The defendant, William C. Segrest, is being sued by plaintiffs in his official capacity as agent and Executive Director of ABPP and is subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

21. The defendant, Wayne Maddux, is being sued by plaintiffs in his official capacity as agent and Principal of the ABPP and Agent-in-Charge of Winston and Marion Counties and is subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

22. The defendant, Don Wright, is being sued by plaintiffs in his official capacity as Jail Administrator for Winston County, Alabama and is subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

23. The defendant, Harold Pendley, is being sued by plaintiffs in his official capacity as Jail Administrator for Marion County, Alabama, and is subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

24. The defendant, Ann Cargo, is being sued by plaintiffs in her official capacity as Division I Division Director for ABPP and is subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

25. The defendant, David Douglas, is being sued by plaintiffs in his official capacity as District E, District Manager for the ABPP and is subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

26. The defendant Anthony Baker (hereinafter "Baker") is being sued by plaintiffs in his individual capacity and is subject to suit under 42 U.S.C. Section 1983 and Plaintiffs' state law claims.

## IV. FACTUAL ALLEGATIONS

27. The defendant Baker was employed as a probation officer in the Twenty-Fifth Judicial Circuit which includes Marion and Winston Counties in Alabama. Baker's position as a probation officer vested him with authority to direct and control plaintiffs, each of whom were assigned to Baker.

28. On information and belief, Baker was employed as a probation officer on or about June 14, 2004 and was terminated on or about August 11, 2005.

29. Baker engaged in repeated incidents of sexual abuse and harassment of plaintiffs, including, but not limited to, inappropriate and unwanted sexual comments, sexual advances, lewd and lascivious gestures and comments, indecent exposure of his genitals, acts of masturbation, kissing, sexual groping or touching, manual penetration of genitals, oral sex, sodomy, and rape. This sexual activity was imposed on the plaintiffs based on Baker's position of power and authority over the plaintiffs and the acts complained of occurred while the plaintiffs were under the physical custody and control of Baker while Baker was in the line and scope of his employment as a probation officer.

30. Baker misused and abused his authority over at least one female placed under his supervision and control by having her picked up at his whim so he could meet her even though she was successfully abiding by the terms of their probation. Baker had at least one female incarcerated at his whim by placing a "hold" on her records so she would be taken into custody by law enforcement. Baker then manipulated the timing of the "revocation hearing" and threatened to make at least one female wait additional time in jail before having a hearing unless she would engage in sexual activity with him.

31. Baker also routinely threatened to cause plaintiffs to suffer longer periods of incarceration, transfer to state prison, revocation of probation, loss of privileges while incarcerated, threatened to make unfavorable recommendations to the District Attorney's office or to the judge assigned to their case. Baker used these threats to intimidate the plaintiffs, to enhance his power and control over plaintiffs,

and to forcibly compel the plaintiffs to engage in sexual activity and satiate Baker's perverted sexual desires.

32. Baker also offered various inducements to females placed by ABPP under Baker's supervision and control in order to coerce or persuade females to engage in sexual activity with him. Baker offered to make favorable recommendations to the District Attorney's office and/or to the judge. Baker also offered to falsify the results of drug screens or otherwise wilfully neglected to perform drug screens. Baker offered to get a quicker hearing date for plaintiffs in jail and offered to recommend their release from jail. Baker offered money and gifts to females placed under his custody and control. Baker offered to take females under his supervision and control out for dates and offered to have sex with them. This list of inducements offered by Baker is not exhaustive, but merely illustrative of the pervasive, habitual making of illegal *quid pro quo* offers by Baker to females under his supervision and control in exchange for sexual favors.

33. Upon information and belief, Baker and other employees of Winston County, Marion County, and ABPP engaged in a pattern and practice of subjecting females on probation to a sexually hostile environment, including forcing females under their custody and/or control to engage in sexual acts with them.

34. Upon information and belief, Baker's supervisors issued warnings to Baker during his employment that he was "too flirty" with females under his control. No corrective action was taken against Baker until August 2005.

35. Prior to Baker's suspension from his duties as probation officer, officials within the District Attorneys Offices for Winston and Marion Counties were aware of multiple complaints against Baker of inappropriate sexual activity directed towards females under their control. Baker's sexual conduct towards females under his control was also a clear violation of Alabama criminal statutes. At a bare minimum, his conduct violated Sections 13A-11-8(A), 13A-6-68, 13A-6-61, 14-11-31, Code of Alabama (1975), as last amended.

36. On information and belief, Jailers, police officers, sheriff's deputies, and other law enforcement personnel in both Winston and Marion Counties knew of Baker's criminal and abusive conduct towards females under his control, yet no actions were taken to prevent further abuses by Baker and further harm to females under Baker's supervision and control.

37. Not until approximately August 11, 2005, well after the first complaints of sexual misconduct reached administration and law enforcement, did ABPP suspend Baker from his position as probation officer.

Factual Allegations Pertaining to Jeni Hodge

38. Plaintiff Jeni Hodge first met Baker at the probation office in Winston County on or around March 2005.

39. Shortly after Hodge began visiting Baker as her probation officer, Baker made inappropriate, invasive, and personal comments about Hodge's marital status. Baker repeatedly commented about Hodge's physical appearance.

40. During a later probation visit, Hodge met at Baker's office as scheduled. Baker touched Hodge on her shoulder, Hodge jumped away, and protested being touched. Baker immediately ordered Hodge to take a drug test. Baker followed Hodge into the restroom, ordered her to keep the stall door open, and ordered her to urinate for a drug test. While Hodge was urinating, Baker pulled his penis out of his pants and fondled himself. Hodge asked Baker to stop. After Hodge urinated in the cup, she tried to stand up but Baker trapped Hodge in the stall and told her she was not leaving. Baker thrust his hands between Hodge's legs to prevent her from pulling up her underwear. As Hodge pleaded with Baker to let her go, Baker raped her.

41. A few days later, Hodge reported the rape to her drug counselor, Billy Higgs, who informed the Board of Pardons and Paroles about the incident.

42. Hodge was subsequently forced to endure another office visit to Baker in or about early August 2005, but she brought her mother and her son with her to keep Baker from hurting her again.

<u>Factual Allegations Pertaining to Tracee Shields</u>

43. Tracee Shields was released from Julia Tutwiler Prison in June 2003 after serving 19 months at Tutwiler prison. Shields then completed a 19 month parole period with Gloria Greening (Cullman, Alabama) as her probation officer. Shields then began a 4.5 year <u>unsupervised</u> probation with Greening.

44. Around February or March 2005, Shields moved from Cullman to Winston County after receiving permission to move from Gloria Greening.

45. Shields did not know that Anthony Baker was her probation officer in Winston County. Shields expected to continue her unsupervised probation and expected to report to her probation officer only if asked.

46. Unknown to Shields, Baker had a "hold" placed on Shields. A "hold" is an instruction for any law enforcement official to take the individual immediately into custody. Shields was taken into custody during a traffic stop, transported to Winston Co. Jail in Double Springs, Alabama, and incarcerated.

47. After approximately a week in jail, Shields first met Anthony Baker.

48. Baker first approached Shields in jail. Baker told Shields that he had a "hold" placed on her and had her picked up because he wanted to meet her and see what she looked like. Baker made inappropriate, invasive, and personal comments to Shields about her physical appearance, and Baker indicated that he found Shields attractive. Baker then informed Shields he had the power to get her a revocation hearing in a couple of days or he could make her wait another month.

49. On another occasion, Baker made inappropriate sexual comments and comments about Shields' physical appearance. Baker exposed his penis, fondled himself, informed Shields that she was in serious trouble and that he, as her probation officer, could have her sent back to prison. Baker offered to get her a hearing in two days if Shields exposed her breasts to him or she could wait another month if she refused.

50. Shields reported to Baker's office, as instructed, after she was released from jail. Behind closed doors, Baker made inappropriate personal comments about his

marital troubles and his sex life. Baker instructed Shields that if she had sex with him, she could just drop off her money for fines and leave without checking in. Baker also informed her that she would not have any drug tests if she performed sexual favors for him.

51. During a subsequent probation visit, Baker made inappropriate, invasive, and personal comments to Shields including, comments about her physical appearance, requests for sex, and made promises that if she had sex with him, she would not have to come back. Shields was afraid she would be sent to prison if she refused Baker's advances.

52. Baker ordered Shields to strip down to her bra and panties. Then he reached into her panties and into her vagina, pulled his pants down, pulled out his penis, ordered Shields to play with his penis, and then ordered her to perform oral sex on him. Baker failed to get an erection, got angry with Shields, grabbed her by the back of her neck, pulled her up, and ordered Shields to sit on his desk and watch.

53. Baker stimulated himself, got an erection, and masturbated in front of her while he made her watch. Baker masturbated until he ejaculated and then he further demeaned Shields by making her clean up his semen while in her panties and bra. While she was cleaning it up, Baker informed Shields that she would have to return to his office because he was disappointed sexually in Shields.

Factual Allegations Pertaining to Kelly Estill

54. Kelly Estill was sentenced in Winston County to serve 5 years probation beginning in or around January 2004. Estill began her probation and attended all required monthly visits to her probation officers Wayne Maddox, "Jeramy," and Bill Gist.

55. In early 2005, Estill was assigned to Baker.

56. During one visit, Baker asked Estill personal questions about Estill's marital status. Baker asked Estill if she would go out on a date with him. Baker made inappropriate, invasive, and personal comments to Estill about her personal appearance.

57. During another visit, Baker flirted with Estill, winked at her, and attempted to grab her breasts. Estill informed Baker that she did not want to be touched and left.

58. Once Estill telephoned Baker because she was afraid she would be late for a meeting. Baker responded that he would wait for her but only if she showed her "cunt" to him. Estill said that she would not show Baker anything. She arrived before the office closed and Baker again asked Estill if she was going to expose her genitalia. She refused and left.

59. At another visit, Baker asked Estill to expose her breasts and vagina. Estill did not. Baker asked Estill if she wanted to see his penis, placed his hands on his pants crotch, and gestured lewdly.

60. During a subsequent visit, Baker told Estill he had something he wanted to show her and pulled his pants down, pulled out his penis, walked around his desk, and

stood directly in front of Estill with his penis near her face. Estill pleaded with Baker to stop as Baker tried forcing Estill to touch his penis.

61. Estill's next visit was at her house because she did not go to Baker's office as scheduled. Baker told Estill that he wanted to come over to her house and "fuck." Estill told him she would not have sex with him.

62. Later, Baker warned Estill that she could not miss any more visits or be late or he would report her which meant she could go to prison for 5 years. Baker again asked Estill for sex. Estill refused his advances.

63. When Estill had difficulty making required payments, Baker told Estill that he would "cover her ass" but she needed to perform sexual favors for him.

Factual Allegations Pertaining to Tammy Ratliff

64. Tammy Ratliff was placed on two years' probation arising out of a misdemeanor theft of property charge in 2003. Ratliff began serving her probation with monthly visits to her probation officer Jeramy West in Winston County.

65. Ratliff was assigned to Anthony Baker in 2005. Her first two visits with Baker were attended by Jeramy West and Bill Gist.

66. Shortly after Ratliff started visiting Baker alone, Baker instructed Ratliff to wear revealing clothing for their probation meetings.

67. Baker ordered Ratliff to show her breasts to him. Baker suggested that he and Ratliff could go into the bathroom together for a drug test, only there would not actually be a drug test. Ratliff responded that she was willing to take a drug test, but not with him.

68. Baker attempted to extort money and/or sex from Ratliff by threatening Ratliff with revocation of her probation and prison. Baker told Ratliff that he held her life in the palm of his hands, or words directly to that effect. Baker offered to waive court ordered payments in exchange for sex.

69. During Ratliff's final visit, Ratliff made her regular payment to Baker, got her receipt, and turned to leave but Baker stood in front of the door and would not let her leave. Ratliff tried to leave but Baker closed the door. Baker pulled his penis out of his pants and ordered Ratliff to touch his penis.

Factual Allegations Pertaining to Charlotte Kelly

70. Charlotte Kelly was abused by Anthony Baker in the evidence room in the back of Marion County Jail when Kelly was there for a court appearance. Baker made inappropriate, invasive, and personal comments to Kelly about her physical appearance. Baker touched Kelly's leg and she moved away from him. Baker exposed his penis, moved closer to Kelly, and started playing with himself. Kelly asked Baker to stop, but he instead moved even closer. Baker rubbed Kelly's hair, grabbed and rubbed her breasts, pulled on her elastic waist band, made lewd and obscene sexual comments, pulled her pants open, thrust his hand down her pants and onto her vagina outside her underwear, and attempted to penetrate Kelly with his fingers. She kept asking Baker to stop but Baker would not stop. Baker then told her that he would schedule a drug test after she was released from custody but they would not really do a drug test. Baker also offered to send her money and

speak on her behalf before the parole board.

Factual Allegations Pertaining to Mary Angela Garrard

71. Mary Garrard's first met Anthony Baker on or about February 2005 at the Winston County Courthouse. In his office, Baker asked Garrard inappropriate, invasive, and personal questions about her sex life and expressed his desire to visit Garrard at her home.

72. Shortly after that, Baker engaged in sexual talk with Garrard in the courthouse and made comments to her about her appearance.

73. During one probation visit, Baker asked her if she would have sex with him and keep it a secret. Garrard indicated she would not and reminded Baker that he was married. Baker indicated that his marriage would not keep him from having sex with her. Baker offered to falsify a drug test for her if she would do what he wanted.

74. While Garrard was jailed in Winston County Jail, Double Springs, Alabama, Baker told her he would help her and not send her to prison. Baker said he would talk to Jack Bostick (District Attorney) and Judge Bentley.

75. Thereafter, Baker took Garrard from jail to his office nearby. Baker, who was wearing his gun, told her to have sex with him and promised if she had sex with him he would make sure she would not go to prison. Baker rubbed her breasts, put his hand under her shirt, rubbed her breasts and nipples, pulled her shirt up, and pulled up her shirt and bra. He repeated that he could help her stay out of prison. Baker ordered her to pull her pants and panties down, made Garrard sit, took her pants off, lifted her legs, spread them apart to expose her vagina, ordered her to engage

in sexual acts, penetrated her manually, masturbated himself, and made her watch. Baker took Garrard back to jail and told her not to tell anybody and said he would help her.

76. Thereafter, Garrard had a hearing and her probation was revoked. Baker apologized and said he had done his best to help her.

77. Thereafter, Baker came to the Winston County Jail on several occasions. Baker exposed his penis, made lewd sexual comments, and asked Garrard to expose her breasts.

Factual Allegations Pertaining to Teresa Nix

78. Teresa Nix was assigned to Anthony Baker in 2005. Nix brought her elderly mother along with her to the probation office. Baker made Nix's mother sit in the hallway while they met. Baker closed the door, started flirting with her, and asked Nix to go out on a date with him. Nix was uncomfortable with Baker's advances and left.

79. During her next scheduled visit, Baker again insisted that Nix's mother wait in the hallway. Baker shut the door, then brushed against her and rubbed her arm. Baker stood directly in front of Nix, rubbed his genitals, and tried to get Nix to look at him. Nix became extremely uncomfortable and said she had a doctor's appointment and left immediately.

Factual Allegations Pertaining to Barbara Dodd

80. Plaintiff Barbara Dodd first met Anthony Baker on or about June 2005 in Winston County Jail, Double Springs, Alabama. Baker approached Dodd in the jail and Baker told Dodd that he would make things easy for him if she would show him

something or he would make things difficult for her if she refused. Baker exposed his penis and fondled himself. Baker did this on two visits to the jail. Dodd complained to Jailer James "Cowboy" Wright about Baker and told Wright the things Baker had done.

Factual Allegations Pertaining to Andrea Hood

81. Andrea Hood first met Anthony Baker on or about May 16, 2005 or shortly after she was ordered to begin her probation.

82. During a probation meeting with Baker, Baker made inappropriate comments to Hood about her physical appearance. Baker told her that he was trying to decide whether to keep her in Winston County or send her to Marion County and that it would help him decide if she would expose her breasts. Baker told Hood that he wanted to see her "downstairs."

83. On another occasion, Baker again asked if he could see Hood's genitals. Hood declined. Baker unzipped his pants, pulled out his penis, and ordered Hood to touch his penis. When Hood tried to leave, Baker groped her buttocks, and simulated sex by grinding his genitals into Hood's buttocks. During this, Hood protested and tried to get away.

Factual Allegations Pertaining to Trinity McQuarry

84. Trinity McQuarry was successfully completing her probation by attending monthly visits with her probation officer Wayne Maddux. McQuarry was transferred to probation officer Bill Gist. Then, around January 2005, McQuarry was transferred again to Anthony Baker.

85. During one visit, Baker masturbated in front of her. Baker told her that he wanted her to wear more revealing clothing for him.

86. During another visit, Baker walked out of his office and ordered McQuarry to go to the bathroom. Baker suggested that she could stay out of trouble if she would let Baker watch her urinate while taking a drug test. Baker tried to look up her shorts, made inappropriate, lewd, and invasive sexual comments, rubbed his penis outside his pants, and instructed McQuarry that he wanted her to answer the door naked for a home visit.

87. During visits in April and/or May 2005, Baker continued to make sexual comments and gestures, rub his penis, and instructed McQuarry to answer the door naked for a home visit.

88. During a visit in about June 2005, Baker made the same lewd sexual comments and rubbed his genitals even though McQuarry's daughter was present.

89. In about August 2005, Baker told McQuarry that he was coming over to her house the next Monday and Baker instructed her to answer the door naked. Baker did not show up at her house because Baker was either suspended from his employment or arrested by law enforcement.

90. Between January and August 2005, Baker made unscheduled visits to McQuarry's house approximately four times. The first time Baker came to her house, McQuarry's fiance was present. On the other occasions, McQuarry did not answer her door.

Factual Allegations Pertaining to Joyce Shaver

91. Plaintiff Joyce Shaver first reported to Anthony Baker around March 2005.

92. During a meeting on or about March 2005, Baker informed her that he kept her from going to prison. Baker closed his office door, told Shaver that he had not had sex for a long time, asked her to call him and meet for sex, put his arm around her, and touched her breast. Baker refused to accept her court ordered payment of $30.00 and she did not pay.

93. During a later visit, Baker closed the door to his office, grabbed and rubbed his penis, and made lewd sexual comments to Shaver. Baker also telephoned Shaver at a friend's house and asked Shaver to go out to dinner with him. Baker visited Shaver at her friend's house on 4-5 occasions without any reason related to her probation. These visits were invasive and unwelcome.

## V. CAUSES OF ACTION

### COUNT ONE - 42 U.S.C. SECTION 1983

94. This claim is brought by all Plaintiffs against Baker, in his individual capacity, and against James Wright, individually, and in his capacity as Jailer for Winston County, Alabama, and against Wayne Maddux, William C. Segrest, Ann Cargo, Davis Douglas, Don Wright, Harold Pendley, in their official capacities. James Wright, Maddux, Segrest, Cargo, Douglas, Don Wright, and Pendley are hereinafter collectively referred to as "officials".

95. In violating Plaintiffs's federally protected rights, the defendants acted under the color of state law.

96. The effect of the sexual abuse/harassment and the failure to remedy the abuse/ harassment, as outlined above, deprived Plaintiffs of their statutory and constitutional rights granted by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Eight Amendment to the United States Constitution; the Fourth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

97. Plaintiffs' rights under the Equal Protection Clause were violated in that males under the custody, supervision, and control of the ABPP were not subjected to the same gender discrimination, sexual harassment, and sexual abuse, as were females.

98. Plaintiffs have a clearly established constitutional right to be free from unlawful searches and seizures.

99. Plaintiffs have a clearly established constitutional right to be free from unlawful sexual harassment and sexual abuse while in custody.

100. Plaintiffs have a clearly established constitutional right to personal bodily integrity.

101. Plaintiffs have a clearly established constitutional right to not be coerced into sexual activity by unlawful threats of punishment in the form of extended term of incarceration, or in the form of less favorable treatment while incarcerated.

102. Plaintiffs have a clearly established right to be free from *quid pro quo* sexual harassment while under the custody and control of the defendants. By means of *quid pro quo* harassment, the defendants extorted payments in the form of sexual favors from the plaintiffs.

103. Plaintiffs have a constitutional right under the Eighth Amendment to be free from cruel and unusual punishment while in custody or while under the supervision and control of ABPP.

104. The sexual harassment inflicted upon Plaintiffs included, but was not limited to, forced sex and other unwanted touchings of a sexual nature and was sufficiently severe or pervasive to alter the conditions of her incarceration and/or probation and also amounted to an unnecessary and wanton infliction of pain.

105. ABPP and its officials knew or should have known about the wide-spread pattern and practice of sexual harassment and abuse suffered by Plaintiffs and other females.

106. ABPP's and its officials' inaction as to the harassment by Baker and other staff members amounted to deliberate indifference to Plaintiffs's constitutional rights.

107. ABPP's and its officials' inaction as to the harassment by Baker and other staff members caused constitutional injuries to Plaintiffs by infringing on their substantive due process rights.

108. ABPP's and its officials' failure to take action to stop the sexually hostile environment constituted deliberate indifference to the known and obvious consequences of allowing the sexually hostile environment to continue in violation of Plaintiffs' constitutional rights.

109. It was the custom among jailers, guards, and probation officers in Winston and Marion Counties to allow Baker to subject female inmates and females on probation to a sexually hostile environment, and it was the policy and custom of the

officials capable of stopping the hostile environment to make no effort to rescue these females from the sexually hostile environment.

110. The defendants' improper custom or policy that encouraged the sexually hostile environment to fester amounted to deliberate indifference to Plaintiffs's federal rights.

111. In failing to take action to prevent or remedy the sexually hostile environment, ABPP and its officials sanctioned the sexually hostile environment.

112. Baker is individually liable under 42 U.S.C. Section 1983 for sexually harassing and abusing Plaintiffs.

**CLAIMS ARISING UNDER ALABAMA STATE LAW[1]**

Except as specifically noted, all claims are brought by all plaintiffs against all defendants.

113. For the purposes of all claims brought under Alabama state statutory or common law against either Marion County, Alabama or Winston County, Alabama, Plaintiffs Kelly Garrard, Estill, Shaver, Hood, McQuarry, Hodge, and Dodd state that they have met the presentment requirements of § 6-5-20, Code of Alabama (1975), as last amended, and their claims have been denied by operation of law.

---

[1] Special pleading requirements exist for claims arising under Alabama state law which are brought against Marion County and Winston County. § 6-5-20, Code of Alabama (1975), as last amended, requires that a party provide a notice of claim to the County Commission prior to filing a lawsuit. The County has 90 days to accept or decline the claim against them. Plaintiffs Charlotte Kelly, Teresa Nix, Tracee Shields, Tammy Ratliff, and Mary Angela Garrard do not make state law claims against Marion County and Winston County at this time. Such claims will be added by amendment when permitted by § 6-5-20, Code of Alabama (1975), as last amended. All other claims are included in this filing.

**COUNT TWO - WANTONNESS**

114. This claim arises under Alabama common law and is brought by plaintiffs against the defendant Baker.

115. Baker's acts as described herein were done intentionally or with reckless disregard to the plaintiffs under conditions that any reasonable person would know such acts would be substantially certain to result in significant injury to the plaintiffs. Plaintiffs claims in this case are grounded in an action for trespass and are consequently governed by the six year statute of limitations set forth in § 6-2-34(1), Code of Alabama (1975), as last amended.

**COUNT THREE - INVASION OF PRIVACY**

116. This claim is brought by plaintiffs against the defendant Baker.

117. Baker invaded the privacy of plaintiffs by, among other things, invading their personal space by touching and forcefully entering private places of their body and making unwelcome, invasive sexual comments to them.

**COUNT FOUR - ASSAULT AND BATTERY**

118. This claim is brought by plaintiffs against Baker.

119. Baker subjected plaintiffs to numerous unwanted touchings.

**COUNT FIVE - OUTRAGE**

120. This claim is brought by plaintiffs against Baker.

121. Baker outrageously and intentionally inflicted emotional distress upon plaintiffs by subjecting them to abusive and harmful touchings, raping and/or sodomizing them, and using inappropriate sexual language toward plaintiffs.

122. Baker caused plaintiffs severe emotional distress by, among other things, subjecting them to unwanted touching of private areas of her body including raping and/or sodomizing them.

123. The conduct described above was extreme, outrageous and beyond the boundaries of decency in a civilized society and caused plaintiffs to suffer emotional distress so severe that the distress is, in the opinion of experts, expected to last a lifetime and which will require future medical treatment, counseling, individual and/or group therapy, medication, and which may include hospitalization.

**COUNT SIX - WANTONNESS *PER SE***

124. This claim arises under Alabama common law and is brought by plaintiffs against the defendant Baker.

125. Each wrongful act committed by Baker as described herein violates one or more of the following criminal statutes: Sections 13A-11-8(A), 13A-6-68, 13A-6-61, 14-11-31, Code of Alabama (1975), as last amended.

126. Therefore, Baker is guilty of wantonness *per se*.

**COUNT SEVEN - STATUTORY LIABILITY FOR FELONIOUS CONDUCT**

127. This claim arises under § 6-5-370, Code of Alabama (1975), as last amended, and is brought by plaintiffs against the defendant Baker as a result of the harm caused to the plaintiffs as a direct result of felonies committed by Baker.

**COUNT EIGHT - NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION**

128. This count arises under Alabama common law and is brought by plaintiffs against all defendants.

129. The defendants either knew or should have known in the exercise of due care that Baker was unfit to serve in a capacity as probation officer prior to hiring Baker. The defendants failure to check the background of Baker prior to hiring or the defendants failure to adequately evaluate Baker prior to hiring proximately caused the plaintiffs each to suffer damages.

130. The defendants failed to adequately train Baker and this failure to train proximately caused the plaintiffs to suffer damages.

131. The defendants failed to supervise Baker and this failure to supervise Baker proximately caused plaintiffs to suffer damages.

132. The defendants retained Baker even after having knowledge of Baker's unfitness for his position as probation officer and the retention of Baker proximately caused plaintiffs to suffer damages.

**COUNT NINE - WANTON HIRING, TRAINING, SUPERVISION, RETENTION**

133. This claim arises under Alabama common law and is brought by plaintiffs against all defendants.

134. The defendants acts or omissions pertaining to the defendants' hiring, training, supervision, and retention of Baker as an employee were done or omitted under conditions that any reasonable person would know that significant harm to persons

in the plaintiffs' position would be a likely result. The defendants' conduct was wanton and this wanton conduct proximately caused plaintiffs to suffer damages.

**COUNT TEN - FALSE IMPRISONMENT**

135. This claim arises under Alabama common law and is brought by plaintiffs against the defendant Baker.

136. By Baker's acts, he is guilty of falsely imprisoning the plaintiffs which resulted in damages to the plaintiffs.

**COUNT ELEVEN - VICARIOUS LIABILITY**

137. This claim arises under both federal and Alabama state law and is brought by plaintiffs against all defendants.

138. The defendants are legally responsible for the acts and omission of their agent, servant, or employee Anthony Baker.

139. The defendants have waived any immunities and/or defenses to vicarious liability by actively participating in the wrongful conduct complained of herein.

140. The defendants have waived any immunities and/or defenses to vicarious liability by adopting and/or ratifying the wrongful conduct complained of herein.

141. The defendants are liable, jointly and severally, along with Baker because the defendants' conduct combined and concurrent to produce the injurious results to the plaintiffs.

## VI. DAMAGES SUFFERED BY PLAINTIFFS AS A RESULT OF THE DEFENDANTS' ACTS OF MALICE AND RECKLESS/INDIFFERENCE

142. The defendants' actions in violation of all the above pled counts were done with malice and/or reckless and deliberate indifference towards Plaintiffs and their rights protected by federal and state law.

143. Because of the sexual abuse and harassment and the defendants' failure to appropriately handle the complaints of sexual abuse and harassment, Plaintiffs have suffered severe emotional distress, pain, anguish, embarrassment, humiliation, and physical and emotional trauma.

144. Plaintiffs also claim the wrongdoing complained of herein warrants the imposition of punitive damages to punish the defendants and to deter others from engaging in similar conduct in the future.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the policies, practices, procedures, conditions and customs of the defendants violate the rights of Plaintiffs as secured by 42 U.S.C. Section 1983, the Fourteenth Amendment to the United States Constitution, the Eight Amendment to the United States Constitution, and the supplemental state law claims;

2. Grant Plaintiffs a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants

and at the defendants' request from continuing to violate, 42 U.S.C. Section 1983, the Eighth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, the Constitution of Alabama, and Alabama state law;

3. Issue a preliminary and permanent injunction against ABPP and its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, sexual harassment or sex discrimination set forth herein;

4. Issue an Order requiring the defendants to initiate and implement programs that (i) provide training for employees and trainees on the subject of sexual harassment; (ii) remedy the effects of the defendants' past and present unlawful practices; and (iii) eliminate the continuing effects of the practices described above;

5. Issue an Order establishing a task force which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure no further abuses occur; (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs created to eliminate sexual abuse in all forms;

6. Issue an Order requiring the defendants to make Plaintiffs whole by awarding each compensatory damages, punitive damages, and compensation for future psychological and medical treatment resulting from the illegal treatment each plaintiff endured and to make plaintiffs whole.

7. An award of litigation costs and expenses, including reasonable attorneys' fees (42 U.S.C. Section 1988), to Plaintiffs;

8. Such other and further relief as the Court may deem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**

Respectfully submitted,

Jon C. Goldfarb (GOL015)
Ethan R. Dettling (DET001)
Attorneys for Plaintiffs

**OF COUNSEL**
WIGGINS, CHILDS, QUINN, & PANTAZIS, LLC.
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
(205) 314-0500